1   MANATT, PHELPS & PHILLIPS, LLP
    JOHN M. LEBLANC (Bar No. CA 155842)
2   Email: jleblanc@manatt.com
    JOHN T. FOGARTY (Bar No. CA 198119)
3   E-mail: jfogarty@manatt.com
    11355 West Olympic Boulevard
4   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
5   Facsimile: (310) 312-4224

6   *Attorneys for Blue Cross Blue Shield of Massachusetts,*
    *Anthem Blue Cross Blue Shield of New Hampshire, and*
7   *Blue Cross of California*

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  LUCAS GONCALVES, a minor, by and | Case No. **'14 CV 1774 GPC NLS** |
| 12  Through his Guardian Ad Litem Tony Goncalves, | **NOTICE OF REMOVAL** |
| 13                Plaintiff, | Concurrently filed with: (1) Notice to adverse parties; and (2) Corporate Disclosure Statement and Notice of Party with Financial Interest. |
| 14        vs. | |
| 15  RADY CHILDREN'S HOSPITAL-SAN DIEGO and DOES 1 through 30, Inclusive, | |
| 16 | |
| 17                Defendant. | |
| 18 | Originally Filed: February 2, 2011 |

19

20          Blue Cross Blue Shield of Massachusetts ("BCBS-MA"), Anthem Blue

21   Cross Blue Shield of New Hampshire ("BCBS-NH"), and Blue Cross of California

22   ("BC-CA") (collectively, the "Blues") respectfully remove this action to the United

23   States District Court for the Southern District of California, and state as follows:

24          1.     The central part of this lawsuit is a medical malpractice action.  This

25   case was filed by Plaintiff as Case No. 37-2011-00085051-CU-MM-CTL in the

26   Superior Court of California, County of San Diego, Central Division.  The Plaintiff

27   is a minor who, shortly after his birth, was allegedly injured by his medical

28   providers, who are the Defendants in this case.  The parties have reached a

settlement of the medical malpractice claims.

2.     The Blues administer a health benefits plan that is sponsored by the federal government and that covers federal employees and annuitants and their dependents, under which Plaintiff was insured.  The federal plan provided substantial benefits on Plaintiff's behalf in connection with injuries sustained by Plaintiff as a result of the alleged malpractice that is the subject of this case.  Under the express terms of the federal plan, Plaintiff is obligated to return to the plan benefits previously paid in connection with an injury whenever Plaintiff recovers from another party for that same injury, as will be the case here when the settlement is consummated.  Accordingly, the Blues, on behalf of the federal plan, have asserted liens against Plaintiff's recovery in this case.

3.     Although none of the Blues are named parties in this case, Plaintiff filed in the state court "Plaintiff's Motion for an Order Expunging Blue Cross/Blue Shield's Lien" ("Motion to Expunge") in which Plaintiff seeks to invalidate the liens asserted by the Blues.  Counsel for Plaintiff purports to have sent to the Blues by facsimile and mail on June 27, 2014, notice of Plaintiff's ex parte application in the state court to set a hearing date on the Motion to Expunge; Plaintiff's counsel maintains that she then sent by facsimile and mail to the Blues a copy of the Motion to Expunge, itself, on July 10, 2014.[1]  Pursuant to 28 U.S.C. § 1446(a), a copy of the Motion to Expunge is attached as Exhibit A-1 to this removal notice, and copies of all other process, pleadings, or orders purportedly served on the Blues are attached among Exhibits A-2 through A-9.

4.     The Blues file this removal notice within the 30-day period required in 28 U.S.C. § 1446(b).

5.     The Blues remove this case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal where a person acting under the direction of a federal agency and

---

[1] None of the Blues have ever been served with formal process in this case.

NOTICE OF REMOVAL

1   its officers is sued for actions taken under color of federal office.

2                          **Nature of the Case**

3          6.     Plaintiff's father was a federal employee who was enrolled in a health

4   plan governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C.

5   §§ 8901-14. *See* Mot. to Expunge at 2.  Plaintiff was enrolled in that plan as a

6   dependent.  This plan is the Blue Cross and Blue Shield Service Benefit Plan (or

7   "the Plan"), one of the federal government's health benefits plans for federal

8   employees and annuitants and their dependents.  The Plan was created by a federal

9   government contract between the United States Office of Personnel Management

10   ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA") pursuant to

11   FEHBA. *See generally* 2008 Service Benefit Plan Master Contract and 2009-12

12   amendments  (Exs. B-1 - B-5) [hereinafter "2008 Master Contract"]; 2013 Service

13   Benefit Plan Master Contract and 2014 amendment (Exs. C-1 - C-2) [hereinafter

14   "2013 Master Contract"]; *see also* 2008 Statement of Benefits for the Service

15   Benefit Plan at 3 (Ex. D) [hereinafter "2008 Statement of Benefits"]; 2009

16   Statement of Benefits for the Service Benefit Plan at 3 (Ex. E); 2010 Statement of

17   Benefits for the Service Benefit Plan at 3 (Ex. F) [hereinafter "2010 Statement of

18   Benefits"]; 2011 Statement of Benefits for the Service Benefit Plan at 3 (Ex. G)

19   [hereinafter "2011 Statement of Benefits"]; 2012 Statement of Benefits for the

20   Service Benefit Plan at 3 (Ex. H) [hereinafter "2012 Statement of Benefits"]; 2013

21   Statement of Benefits for the Service Benefit Plan at 4 (Ex. I) [hereinafter "2013

22   Statement of Benefits"]; 2014 Statement of Benefits for the Service Benefit Plan at

23   5 (Ex. J) [hereinafter "2014 Statement of Benefits"].

24          7.     In contracting to establish the Plan, BCBSA acts on behalf of local

25   Blue Cross and Blue Shield companies that administer the Plan in their respective

26   localities; the Blues are such companies and administer the Plan in Massachusetts,

27   New Hampshire, and California (where Plaintiff received treatment for his injuries

28   allegedly caused by Defendants).  *See* 2008 Statement of Benefits at 3; 2009

1   Statement of Benefits at 3; 2010 Statement of Benefits at 3; 2011 Statement of
2   Benefits at 3; 2012 Statement of Benefits at 3; 2013 Statement of Benefits at 4;
3   2014 Statement of Benefits at 5.

4        8.    In 2007 or 2008, Plaintiff was being treated at Defendant Rady
5   Children's Hospital ("Rady") where he alleged suffered two intestinal perforations
6   as a result of Rady's, and others', negligence. Mot. to Expunge at 1-2. In
7   connection with the injuries suffered as a result of these intestinal perforations (the
8   "Injuries"), Plaintiff received substantial medical treatment. *Id.* at 2. The Plan paid
9   benefits of at least $459,483.57 for the treatment Plaintiff received in connection
10   the Injuries. *Id.*; *see also* Decl. of Amy R. Martel, ¶ 2 (July 10, 2014) (Ex. A-2).

11        9.    As noted above, Plaintiff alleged in this case that his Injuries were the
12   result of Defendants' negligence. Plaintiff and Defendants have reached a
13   settlement in this case. *See* Decl. of Amy R. Martel, ¶ 2 (June 30, 2014) (Ex. A-6).
14   The Blues understand that settlement to be well in excess of $1 million.

15        10.    The Plan's Statement of Benefits states expressly that the Plan shall
16   have a right to reimbursement or subrogation from an enrollee for benefits paid to
17   that enrollee, in the event the enrollee recovers for a condition or injury from a third
18   party and the Plan had paid benefits in association with that condition or injury.
19   2008 Statement of Benefits at 105-06; 2009 Statement of Benefits at 114-15; 2010
20   Statement of Benefits at 112; 2011 Statement of Benefits at 135-36; 2012 Statement
21   of Benefits at 125-26; 2013 Statement of Benefits at 135-36; 2014 Statement of
22   Benefits at 133-34. Pursuant to this provision, the Blues have asserted liens on
23   Plaintiff's settlement in amounts equal to the benefits paid on Plaintiff's behalf for
24   the Injuries. *See* Mot. to Expunge at 2 (and Exs. 1-3 thereto); Decl. of Amy R.
25   Martel, ¶ 2 (July 10, 2014) (Ex. A-2).

26        11.    Plaintiff contends that state law – Cal. Civ. Code § 3333.1 – precludes
27   the Blues claims for reimbursement. Mot. to Expunge at 3. On this theory,
28   Plaintiff asks the state court to find the liens to be "unenforceable" and "to expunge

1   the [Blues'] liens." *Id.* at 6.

2       12.    The Plan's express terms, however, require that all of the benefits that

3   the Plan paid in connection with the Injuries be reimbursed to the Plan.

4   Specifically, those terms state that the Plan is entitled to "[a]ll recoveries" and do

5   not allow for any amount of the recovery to be retained by the enrollee unless the

6   Plan has been reimbursed all of the benefits it paid (or the Plan's carrier otherwise

7   consents in writing, which has not occurred here).  2008 Statement of Benefits at

8   105-06; 2009 Statement of Benefits at 114-15; 2010 Statement of Benefits at 112;

9   2011 Statement of Benefits at 135; 2012 Statement of Benefits at 125; 2013

10  Statement of Benefits at 135-36; 2014 Statement of Benefits at 133.

11      13.    Accordingly, under the Plan's express terms as agreed to with OPM,

12  the Plan is entitled to recover from Plaintiff the entire amount of benefits that it paid

13  in connection with the Injuries.

14              **Contractual and Regulatory Background**

15      14.    FEHBA and the regulations implementing it set forth a comprehensive

16  framework for the supervision and administration of FEHBA plans, including the

17  Service Benefit Plan.

18          a.    Under FEHBA, OPM is vested with sole authority to contract

19  for the provision of health plans, to determine the benefit structure of each plan, and

20  to promulgate the official description of a plan's terms in a Statement of Benefits.

21  *See* 5 U.S.C. §§ 8902(a), (d), 8907.  The Statement of Benefits is incorporated into

22  the government contract between OPM and BCBSA.  *See* 2008 Master Contract

23  § 2.2(a); 2013 Master Contract § 2.2(a).

24          b.    The Statement of Benefits for the Plan states expressly that the

25  Plan shall have a right to reimbursement or subrogation from an enrollee for

26  benefits paid to that enrollee, in the event the enrollee recovers for a condition or

27  injury from a third party and the Plan had paid benefits in association with that

28  condition or injury.  2008 Statement of Benefits at 105-06; 2009 Statement of

NOTICE OF REMOVAL

1  Benefits at 114-15; 2010 Statement of Benefits at 112; 2011 Statement of Benefits

2  at 135-36; 2012 Statement of Benefits at 125-26; 2013 Statement of Benefits at

3  135-36; 2014 Statement of Benefits at 133-34.

4          c.     In addition, the federal contract between OPM and BCBSA

5  provides:

6      The Carrier's subrogation rights, procedures and policies, including
recovery rights, for payments with respect to benefits shall be in

7      accordance with the provisions of the agreed upon brochure text [*i.e.*,
the Statement of Benefits], which is incorporated in this Contract in

8      Appendix A. As the member is obligated by Section 2.3(a) to comply
with the terms of this Contract, the Carrier, in its discretion, shall have

9      the right to file suit in federal court in order to enforce those rights.

10  2013 Master Contract § 2.5(a); *see also* 2008 Master Contract § 2.5(a);

11          d.     The OPM-BCBSA contract also requires the carrier to make "a

12  reasonable effort to seek recovery of amounts to which it is entitled to recover in

13  cases which are brought to its attention." 2008 Master Contract § 2.5(c) (as

14  amended by § 4.1(j)); 2013 Master Contract § 2.5(c) (as amended by § 4.1(m)); *see*

15  *also Empire HealthChoice Assurance v. McVeigh*, 547 U.S. 677, 685 (2006)

16  (quoting contractual language).

17          e.     Congress intended federal employees in every state to be treated

18  consistently under FEHBA plans. For example, FEHBA includes a preemption

19  provision. 5 U.S.C. § 8902(m)(1) (as amended by the Federal Employees Health

20  Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366).

21  With this preemption provision, Congress sought to "strengthen the ability of

22  national plans to offer uniform benefits and rates to enrollees regardless of where

23  they may live." H.R. Rep. No. 105-374, at 9 (1997); *accord* S. Rep. No. 95-903, at

24  2 (1978) (legislative history of FEHBA's original preemption provision); *see also*

25  *Empire*, 547 U.S. at 686. This policy of nation-wide consistency also applies to

26  subrogation and is embodied in the contract between OPM and BCBSA: "[A]ll

27  Participating Plans shall subrogate under a single, nation-wide policy to ensure

28  equitable and consistent treatment for all Members under the contract." 2008 Master

          NOTICE OF REMOVAL

1    Contract § 2.5(f) (as amended by § 4.1(j)); 2013 Master Contract § 2.5(f) (as

2    amended by § 4.1(m)).

3           f.      Congress delegated solely to OPM the authority to police the

4    conduct and practices of FEHBA carriers, and the agency has promulgated

5    extensive regulations on the topic. *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a);

6    48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp.

7    37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of the Mid-Atl.*

8    *States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

9           g.      OPM has specifically directed that FEHBA carriers obtain

10   reimbursement recoveries even when state law purports to prohibit such recoveries.

11   *See* FEHB Program Carrier Letter (June 18, 2012) (Ex. K) [the "OPM Letter"].  It

12   is OPM's view that such state laws are preempted by FEHBA. *Id.*

13          h.      Under FEHBA, the federal government pays for the majority of

14   the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5

15   U.S.C. § 8906(b)(1), (b)(2), (f).  All premiums are deposited initially into the

16   Employees Health Benefits Fund within the U.S. Treasury.  5 U.S.C. § 8909(a).

17   Carriers of experience-rated FEHBA plans – such as the Plan (*see, e.g.*, 2008

18   Master Contract § 3.3(a); 2013 Master Contract § 3.3(a)) – do not receive the

19   premiums as they are paid into the Employees Health Benefits Fund in the federal

20   Treasury.  Instead, the premiums for the Plan are placed into a special letter of

21   credit account within the U.S. Treasury fund.  48 C.F.R. § 1632.170(b)(1); *see also*

22   *id.* § 1652.232-71(d).  The Blue Cross and Blue Shield entities administering the

23   Plan, such as the Blues, then draw directly from the letter of credit account in the

24   Treasury fund to pay for benefit claims and allowable administrative expenses. *Id.*

25   §§ 1632.170(b), 1652.216-71(b).  Any Plan premiums that are not used to pay

26   benefits and administrative expenses remain the property of the government, and

27   are not paid to the carrier. *See, e.g.*, 2013 Master Contract § 3.3.  "Pursuant to the

28   OPM-BCBSA master contract, reimbursements obtained by the carrier must be

7

1   returned to the Treasury Fund." *Empire*, 547 U.S. at 685; *see also* 2008 Master

2   Contract § 2.5(b); 2013 Master Contract § 2.5(b).  Thus, reimbursement recoveries

3   obtained by the Blues from Plaintiff relating to this case will be returned to the

4   federal Treasury.

5                                **Grounds for Removal**

6          15.    This case is removable under the Federal Officer Removal Statute, 28

7   U.S.C. § 1442(a)(1), which authorizes removal of a proceeding against "any officer

8   (or person acting under that officer) of the United States or of any agency thereof,

9   in an official capacity, for or relating to any act under color of such office."  28

10  U.S.C. § 1442(a)(1).

11         16.    In a recent decision involving the Plan, the Eighth Circuit confirmed

12  that FEHBA reimbursement disputes like the one presented in Plaintiff's Motion to

13  Expunge are removable by the Plan's administrators under the Federal Officer

14  Removal Statute.  *See Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012).[2]

15         17.    To invoke § 1442(a)(1), a private party "must show that (1) it is a

16  'person' within the meaning of the statute, (2) a causal nexus exists between

17  plaintiffs' claims and the actions [the removing party] took pursuant to a federal

18  officer's direction, and (3) it has a 'colorable' federal defense to plaintiffs' claims."

19  *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014).

20  ───────────────────

21  [2] *See also Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross  Blue
    Shield of Fla.*, No. 03-15664, slip op. at 3-5 (11th Cir. Mar. 18, 2005) (holding that

22  Blue Cross Blue Shield entity administering FEHBA plan properly invoked section
    1442(a)(1) to remove claim) (Ex. L); *Ala. Dental Ass'n, v. Blue Cross & Blue
    Shield of Ala., Inc.*, No. 2:05-cv-01230-MEF, 2007 U.S. Dist. LEXIS 685, at *21-

23  25 (M.D. Ala. Jan. 3, 2007); *accord Peterson v. Blue Cross/Blue Shield of Tex.*, 508
    F.2d 55, 56-57 (5th Cir. 1975) (holding that Blue Cross Blue Shield entities

24  administering Medicare plan properly removed claim brought by provider, pursuant
    to section 1442(a)(1)); *Group Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887,

25  891 (S.D.N.Y. 1984) (same); *Thompson v. Cmty. Ins. Co.*, No. C-3-98-323, 1999
    U.S. Dist. LEXIS 21725, at *6-28 (S.D. Ohio Mar. 3, 1999) (holding that HMO

26  administering Medicare plan properly removed case pursuant to section
    1442(a)(1)); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347,

27  1351-52 (M.D. Ala. 1999) (holding that Blue Cross Blue Shield entity
    administering health benefits plan for dependents of military retirees properly

28  removed case pursuant to section 1442(a)(1)).

                                           8

1       18.   The first requirement is easily met, as corporations – and private

2    government contractors in particular – are "persons" within the meaning of the

3    statute. *See Leite*, 749 F.3d at 1122 n.4.

4       19.   As relates to the second requirement, a person is deemed to be sued for

5    actions under the direction of a federal agency and federal officers where, as is the

6    case with the Blues' administration of the Service Benefit Plan here, it is

7    administering the terms of a federal government contract or federal program under

8    the direct and detailed supervision of a federal agency.  Government contractors

9    may remove a case pursuant to the Federal Officer Removal Statute where "the acts

10    for which they are being sued . . . occurred because of what they were asked to do

11    by the Government," even if the acts were not "specifically contemplated by the

12    government contract." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137, 138 (2d

13    Cir. 2008).  Here, BCBSA and the Blues (and other local Blue Cross and Blue

14    Shield companies) "help the government fulfill the basic task of establishing a

15    health benefits program for federal employees.  OPM has direct and extensive

16    control over these benefit contracts under the FEHBA." *Jacks*, 701 F.3d at 1233.

17    "[B]roadly speaking, the subrogation provision [in the OPM-BCBSA contract] is

18    necessarily a product of the benefit payment process, a process over which OPM

19    exerts regulatory control." *Id.*  For these reasons, among others, the Eighth Circuit

20    concluded in *Jacks* that, in making efforts to obtain reimbursement, a local Blue

21    Cross and Blue Shield company was "acting under" an agency of the United States

22    within the meaning of 28 U.S.C. § 1442(a)(1). *Jacks*, 701 F.3d at 1230-35.  This

23    case is no different.

24       20.   In addition, the "causal nexus" element of the second requirement is

25    met because Plaintiff's Motion to Expunge was filed expressly because of the

26    Blues' actions taken in the course of administering the Plan – specifically, in paying

27    benefits and seeking reimbursement following Plaintiff's recovery from third

28    parties.  As noted above, the Blues' actions in seeking reimbursement are mandated

NOTICE OF REMOVAL

by OPM in the Service Benefit Plan's Statement of Benefits, the terms of the pertinent government contract, and the OPM Letter.  On this basis, Plaintiff's Motion to Expunge is causally connected to the Blues' actions under the direction of a federal agency and its officers. *See id.* at 1230 n.3 (finding the requisite causal connection); *see also Leite*, 749 F.3d at 1124.

21.    The third requirement is met because the Blues have colorable federal defenses to Plaintiff's assertion that the Plan's reimbursement rights are invalid. First, the claims in Plaintiff's Motion to Expunge are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and benefits payments shall supersede state law. *See Hayes v. Prudential Ins. Co.*, 819 F.2d 921 (9th Cir. 1987); *see also Calingo v. Meridian Res. Co.*, No. 11 CV 628, 2013 U.S. Dist. LEXIS 42759 (S.D.N.Y. Feb. 20, 2013) (finding preemption in FEHBA reimbursement dispute); *see also* Ex. K at 2 (OPM Letter).  Second, Plaintiff's state-law claims are displaced by federal common law, which governs the federal contract at the heart of this case. *See New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996); *Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961).  Third, there is a colorable defense of sovereign immunity.  In this regard, Plaintiff seeks to override the Plan's terms with California state law, thereby interfering with the federal government's administration of FEHBA benefits; and Plaintiff pursues a remedy under state law to thwart reimbursement that is not permitted against the United States, to whose benefit reimbursement recoveries inure. *See Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856-57 (9th Cir. 1984); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311-13 (11th Cir. 2000); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  In *Jacks*, the Eighth Circuit found each of these three defenses to be colorable for purposes of the Federal Officer Removal Statute. *Jacks*, 701 F.3d at 1235.

NOTICE OF REMOVAL

22.     Though the Blues are not formally named parties in the underlying malpractice case, a litigant need not be a formally named party in order to remove under the Federal Officer Removal Statute.  The Federal Officer Removal Statute authorizes removal for a "civil action . . . against *or* directed to" a person acting under a federal officer (28 U.S.C. § 1442(a) (emphasis added)), and a "civil action" includes "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued." *Id.* § 1442(d)(1).

23.     Plaintiff maintains that federal jurisdiction is absent in this case because the apportionment of a minor's settlement is a matter of state law. *E.g.,* Mot. to Expunge at 2-3.  However, even if that were true (and the Blues do not concede that it is), it is irrelevant under the Federal Officer Removal Statute.  The right of removal under that statue is "absolute" and exists "regardless of whether the suit could originally have been brought in federal court." *See, e.g., Willingham v Morgan*, 395 U.S. 402, 406 (1969); *see also Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310 (9th Cir. 1981) (federal officer removal statute "is not keyed to the original jurisdiction of the federal district court").

24.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly provide written notice of this removal to the Superior Court of California, County of San Diego, Central Division.

11

NOTICE OF REMOVAL

1    Dated:  July 28, 2014                MANATT, PHELPS & PHILLIPS, LLP
                                          John M. LeBlanc
2                                         John T. Fogarty

3

4                                         By:    /s/ John M. LeBlanc
                                                 John M. LeBlanc
5                                                *Attorneys for Blue Cross Blue Shield of
                                                 Massachusetts, Anthem Blue Cross Blue
6                                                 Shield of New Hampshire, and Blue Cross
                                                 of California*
7

8

9

10

11   312621174.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          12
                                                                  NOTICE OF REMOVAL