# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS GONCALVES, a minor, by and through his Guardian Ad Litem Tony Goncalves,<br><br>                                 Plaintiff,<br><br>v.<br><br>RADY CHILDREN'S HOSPITAL SAN DIEGO and DOES 1 through 30, Inclusive,<br><br>                                 Defendants. | CASE NO. 3:14-cv-1774-GPC-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND TO STATE COURT;**<br><br>**[ECF No. 6]**<br><br>**(2) GRANTING PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE SUBMISSION OF SUPPLEMENTAL AUTHORITY**<br><br>**[ECF No. 19]** |

## I. INTRODUCTION

Before the Court is Plaintiff Lucas Gonvalves's, a minor by and through his Guardian Ad Litem Tony Goncalves, ("Plaintiff") Motion to Remand to State Court. (ECF No. 6.) Blue Cross and Blue Shield of Massachusetts ("BCBS-MA"), Anthem Blue Cross Blue Shield of New Hampshire ("BCBS-NH"), and Blue Cross of California ("BC-CA") (collectively, the "Blues") opposed. (ECF No. 15.) Plaintiff responded to the Blues' opposition. (ECF No. 16.) A hearing was held on November

7, 2014. (ECF No. 22.)

The parties have fully briefed the motion. (ECF Nos. 6, 15, 16.) Upon review of the moving papers, admissible evidence, oral argument, and applicable law, the Court finds that the probate exception applies to this case and GRANTS Plaintiff's Motion to Remand to State Court.

## II. PROCEDURAL HISTORY

On February 2, 2011, Plaintiff filed a complaint in San Diego Superior Court alleging medical malpractice against Rady Children's Hospital San Diego ("RCHSD") and Does 1 through 30 (the "State Court Case"). (*See* ECF No. 1-1, Ex. A-1, at 2.[1]) In the State Court Case, on July 14, 2014, Plaintiff filed a Motion for an Order Expunging Blue Cross/Blue Shield's Lien. (*Id.*) On July 28, 2014, the Blues removed this action to the United States District Court for the Southern District of California. (ECF No. 1.)

On August 26, 2014, Plaintiff filed a motion to remand this case to state court. (ECF No. 6.) On October 3, 2014, the Blues filed an opposition to Plaintiff's motion. (ECF No. 15.) On October 17, 2014, Plaintiff filed a response to the Blues' opposition. (ECF No. 16.)

On November 3, 2014, Plaintiff filed an ex parte motion for leave to file submission of supplemental authority. (ECF No. 19.) On November 4, 2014, the Blues opposed Plaintiff's ex parte motion. (ECF No. 20.) Good cause appearing, the Court GRANTS Plaintiff's ex parte motion and considers the arguments raised in both the ex parte motion and its opposition.

## III. FACTUAL BACKGROUND

On October 2, 2007, Plaintiff was born at Pioneer Memorial Hospital in Brawley, California and was subsequently transferred to Rady Children's Hospital of San Diego ("RCHSD") in San Diego, California. (ECF No. 6-1, at 5.) While being treated at RCHSD, Plaintiff suffered internal injuries that he alleges are a result of medical

---

[1] References to exhibits attached to the Blues' Notice of Removal, (ECF Nos. 1-1–1-30), refer to the continuous page numbers stamped in the bottom right of each page.

1  negligence. (ECF No. 1-1, Ex. A-1, at 2–3.) On May 12, 2008, Plaintiff was transferred
2  to Children's Hospital Boston in Boston, Massachusetts. (*Id.* at 3.) On February 2,
3  2011, Plaintiff filed the State Court Case alleging medical malpractice. (*Id.* at 2.)

    At the time of Plaintiff's birth, his father was a federal employee enrolled in a Federal Employee Health Benefit Act ("FEHBA") health insurance plan (the "Plan") maintained by the Blues. (ECF No. 1-1, Ex. A-1, at 2.) Pursuant to the Plan, the Blues paid Plaintiff $459,483.57 for the medical treatment Plaintiff received in connection with his injuries at RCHSD. (*Id.*)

    The Plan states that:

> (a) The Carrier's subrogation rights, procedures and policies, including recovery rights, shall be in accordance with the provisions of the agreed upon brochure text [i.e., the Statement of Benefits], which is incorporated in this Contract in Appendix A. As the member is obligated . . . to comply with the terms of this Contract, the Carrier, in its discretion, shall have the right to file suit in federal court in order to enforce those rights. . . .
>
> (d) The Carrier may also recover directly from the Member all amounts received by the Member by suit, settlement, or otherwise from any third party or its insurer . . . , for benefits which have also been paid under this contract.

(ECF No. 1-3, Ex. B-1, at 187; ECF No. 1-8, Ex. C-1, at 533.)

    The Plan further states that: (1) the Blues must "mak[e] reasonable effort to seek recovery of amounts to which it is entitled to recover in cases which are brought to its attention"; (2) "[t]he Member shall take such action, furnish such information and assistance, and execute such papers as the Carrier or its representative believes are necessary to facilitate enforcement of its rights, and shall take no action which would prejudice the interests of the Carrier to subrogation"; and (3) all Blue Cross and Blue Shield entities administering the Plan "shall subrogate under a single, nation-wide

policy to ensure equitable and consistent treatment for all Members under the contract."( ECF No. 1-8, at 533.)

On July 10, 2014, in the State Court Case, Plaintiff filed a motion to expunge the Blues' lien. (ECF No. 1-1, Ex. A-1.) On July 28, 2014, the Blues removed this action to the United States District Court for the Southern District of California. (ECF No. 1.)

## IV. DISCUSSION

28 U.S.C. § 1442(a)(1) allows removal to a federal district court any "civil action . . . commenced in a State court and that is against or directed to" the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442. 28 U.S.C. § 1442(d)(1) defines "civil action" to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." *Id.* A party must meet three requirements to invoke § 1442(a)(1): (1) "it is a 'person' within the meaning of the statute," (2) "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims," and (3) "it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citations omitted). Once a party properly removes pursuant to § 1442(a)(1), the federal district court has jurisdiction over the matter. *Ely Valley Mines, Inc. v. Hartford Acc. and Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981); *see also Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany, N.A., U.S.* ("*Niagara*"), 791 F.2d 242, 244 (2d Cir. 1986) ("The removal statute used by the government in this case, 28 U.S.C. § 1442(a)(1), confers jurisdiction as well as the right of removal.").

Plaintiff argues five reasons why removal is improper: (1) the Blues are not parties to the State Court Case and thus lack standing to remove; (2) *Empire HealthChoice Assurance, Inc. v. McVeigh* ("*Empire*"), 547 U.S. 677 (2006), bars jurisdiction in this case; (3) the Blues are not acting under a federal agency's direction

because whether to seek reimbursement is discretionary; (4) *Empire* bars the Blues from asserting a colorable federal defense; and (5) the probate exception prevents federal jurisdiction. (ECF No. 6-1, at 7–12.)

**A. Federal Officer Removal**

    **1. Person and Non-Party Removal**

The Blues assert, and Plaintiff does not dispute, that they are "persons" within the meaning of § 1442. *See Durham*, 445 F.3d at 1251. As the Blues are corporations, they are "persons." *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.4 (9th Cir. 2014) (citations omitted). However, Plaintiff does argue that the Blues, as non-parties, do not have standing to remove under § 1442(a)(1). (ECF No. 6-1, at 7–8.)

In 2011, Congress passed the Removal Clarification Act of 2011 (the "RCA"). *See* H.R. REP. NO. 112-17(I) (2011), *reprinted in* 2011 U.S.C.C.A.N. 420. In pertinent part, the RCA added § 1442(d)(1), defining the term "civil action," to the federal officer removal statute. *Id.* at 6. The RCA's legislative history shows that Congress was concerned primarily with the disparate application of the federal officer removal statute to discovery requests directed towards federal officers prior to any lawsuit being filed. *Id.* at 3–4. The purpose of the RCA was to make clear that even if a claim had not been filed against a federal officer, that officer could still properly remove under § 1442. *Id.* However, while Congress appeared to be explicitly concerned with state pre-suit discovery statutes, *see id.* at 6, the language of § 1442(d)(1) is much broader. § 1442(d)(1) not only includes "a subpoena for testimony or documents" within the definition of "civil action"—Congress's primary concern in the RCA—but goes further and includes "any proceeding (whether or not ancillary to another proceeding) to the extent that in such a proceeding a judicial order . . . is sought or issued." *See* 28 U.S.C. § 1442. While the Court notes that there is both a lack of pre-RCA non-subpoena cases as well as a lack of post-RCA cases interpreting § 1442(d)(1), *see In re Crowley*, No. 1:11-cv-1323, 2012 WL 4038445, at *3 (W.D. Mich. Sept. 13, 2012), the plain language of the statute is far broader than the pre-suit discovery cases discussed in the

legislative history.

Plaintiff argues that the RCA intended to clarify the federal officer removal statute's purpose. (*See* ECF No. 16, at 3 (citing that purpose as preventing state courts from holding federal officers civilly or criminally liable)). The Court disagrees. The legislative record does not show that Congress was concerned with clarifying § 1442's purpose, rather the legislative record clearly shows that Congress was concerned with § 1442's inconsistent application by the federal courts and intended to clarify the situations in which removal is proper. Moreover, federal courts have held that non-parties may remove subpoena enforcement proceedings against federal officers. *See Ghorashi-Bajestani v. Bajestani*, No. 1:11-cv-0295, 2012 WL 5205547, at *2 (E.D. Tenn. May 3, 2012) (collecting cases); *Pollock v. Barbosa Group, Inc.*, 478 F. Supp. 2d 410, 413 (W.D.N.Y. 2007) (same). Accordingly, the Court finds that § 1442(a)(1) does allow for removal by non-parties and does allow for removal in "any proceeding" where a "judicial order . . . is sought or issued" even if such proceedings do not involve pre-suit discovery, such as the underlying state proceeding in this case.

**2. Causal Nexus**

As there is no on point Ninth Circuit precedent as to whether a FEHBA plan provider pursuing a subrogation claim meets the causal nexus requirement of § 1442(a)(1), the parties cite and rely on two cases in the Eighth Circuit, one district and one appellate, that reach opposite conclusions on the issue. *Compare Jacks v. Meridian Resource Co.*, 701 F.3d 1224 (8th Cir. 2012) (finding the causal nexus requirement met) *with Van Horn v. Ark. Blue Cross and Blue Shield*, 629 F. Supp. 2d 905 (E.D. Ark. 2007) (finding no causal nexus); *see also Durham*, 445 F.3d at 1251.

As an initial matter, Plaintiff argues that *Jacks* merely disagreed with but did not "overturn" *Van Horn*. (ECF No. 16, at 7–8.) However, *Van Horn* was a district court case and thus the *Jacks* court had no need to overrule a case that was not precedential. More importantly for purposes of the present motion, whether *Van Horn* is still good law in the Eighth Circuit is immaterial. Neither of these are Ninth Circuit or Supreme

1  Court cases and thus are not precedential in the Southern District of California.

2  In *Van Horn*, an insurance carrier exercised its subrogation rights pursuant to a FEHBA plan worded similarly to the present one. 629 F. Supp. 2d at 914 ("As the member is obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier, in its discretion, shall have the right to file suit in federal court in order to enforce these rights.") The *Van Horn* court held that, under the plan's language, exercise of subrogation rights was discretionary. *Id.* at 914–15. Thus the insurance carrier was not acting under the direction of a federal agency or officer could not remove under § 1442(a)(1). *Id.*

Looking to FEHBA's legislative history, the Eighth Circuit reached a different conclusion. *See Jacks*, 701 F.3d at 1232–33. The *Jacks* court found that the purpose of FEHBA was to "establish a health benefits program for federal employees, so as to compete for the best talent along with private companies" and thus FEHBA providers "help the government fulfill the basic task of establishing a health benefits program for federal employees." *Id.* at 1233. The Jacks court also noted OPM's extensive control over FEHBA providers such as the ability to "withdraw approval of [a FEHBA provider] or terminate its contract" if OPM "finds [a FEHBA provider's] performance wanting." *Id.* at 1234. Thus, the *Jacks* court held that a FEHBA insurance provider pursuing a subrogation was acting pursuant to the direction of OPM. *Id.* at 1235–36.

The Court agrees with the Eighth Circuit. The reading of FEHBA plan language advocated by Plaintiff and applied in *Van Horn* is too restrictive. While the Blues have discretion whether to sue to enforce their subrogation rights, the plan language definitively gives the Blues those rights whether they choose to sue or not. As insurance carriers contracting with the federal government, the Blues are subject to extensive oversight by OPM. *See Jacks*, 701 F.3d at 1233–34. Accordingly, the Court finds that, in exercising their subrogation rights, the Blues actions were taken pursuant to a federal officer's direction.

/ /

**3. Colorable Federal Defense**

To invoke 28 U.S.C. § 1442, a party need only have a "colorable [federal] defense" and "need not win [the] case before [the party] can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969). The Blues argue that they have three colorable federal defenses to Plaintiff's motion to expunge: (1) preemption of California law by FEHBA's preemption provision; (2) sovereign immunity; and (3) displacement of state law by federal common law. (ECF No. 15, at 11–12.) As the Supreme Court has stated that the Blues' preemption defense is at least a "plausible" construction of FEHBA, *see Empire*, 547 U.S. at 697–98, and other courts have been open to the Blues' sovereign immunity and displacement defenses, *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988); *Hagameier v. Block*, 806 F.2d 197, 202 (8th Cir. 1986), the Court finds that the Blues have colorable federal defenses. *See Jacks*, 701 F.3d at 1235. As the Blues have met all three requirements for federal officer removal, *see Durham*, 445 F.3d at 1251, the Court now turns to Plaintiff's remaining objections to removal.

**B. *Empire***

Plaintiff argues that, pursuant to the Supreme Court's decision in *Empire*, there is no federal jurisdiction in this case. (ECF No. 6-1, at 8–10.) In *Empire*, a FEHBA plan provider filed suit in federal court to enforce its subrogation rights against its insured who had received a settlement. 547 U.S. at 683. The Supreme Court was presented with the issue of whether a FEHBA plan provider's subrogation cause of action "aris[es] under the . . . laws . . . of the United States." *Id.* The Supreme Court looked to FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1), and held that § 8902(m)(1) does not confer federal jurisdiction. *Id.* at 698. Thus the Supreme Court held that, under FEHBA, contract-based reimbursement claims were state law causes of action. *Id.* at 698–99. However, the Supreme Court noted that it did not decide the issue of whether § 8902(m)(1) preempted state subrogation laws. *Id.* at 698.

*Empire* is inapplicable to present case for two interrelated reasons. First, *Empire*

dealt with federal question jurisdiction under 28 U.S.C. § 1331, not federal officer removal under 28 U.S.C. § 1442(a)(1). *See* 547 U.S. at 683. Once a party meets the requirements of the federal officer removal statute, the Court is conferred with jurisdiction and need not rely on other jurisdiction conferring statutes. *Niagara*, 791 F.2d at 244. Second, the facts of *Empire* are distinguishable from the facts of the present case. In *Empire*, the FEHBA insurance provider sued directly in federal district court, thus relying on federal question jurisdiction pursuant to § 1331. 547 U.S. at 687–88. In the present case, Plaintiff filed a motion to expunge in state court which prompted the Blues to respond by removing to federal court under § 1442(a)(1). It is precisely because of the difference between *Empire* and this case that the Blues rely on § 1442(a)(1), not § 1331, and why *Empire* is inapplicable to this action. Accordingly, the Court finds that *Empire* does not bar jurisdiction in this case.

**C. Probate Exception**

In determining whether the probate exception to federal jurisdiction applies, the Court follows the two-part inquiry set forth by the Second Circuit in *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002). *In re Marshall*, 392 F.3d 1118, 1132 (9th Cir. 2004), *rev'd on other grounds sub nom. Marshall v. Marshall*, 547 U.S. 293 (2006). First, the Court determines whether the matter is "purely probate in nature," such as if the Court is being asked directly to probate a will or administer an estate. *Id.* at 1133. Second, the Court determines whether the issue is related to probate by asking whether federal jurisdiction would: "(1) interfere with the probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control over property in custody of the state court." *Id.* "If the answer to [either] of these questions is yes, then the probate exception applies." *Id.*

The Blues argue that the probate exception does not apply to the federal officer removal statute. (ECF No. 15, at 20–21.) Plaintiff has not cited, nor has the Court found, any case in which a federal court has applied the probate exception to federal officer removal jurisdiction. However, while some courts have grappled with whether

to apply the probate exception outside of the diversity context, *see Jones v. Brennan*, 465 F.3d 304, 306–07 (7th Cir. 2006) (noting the split of authority as to whether the probate exception applies outside of diversity cases), the Ninth Circuit has recognized a broad application of the probate exception. *See In re Marshall*, 392 F.3d at 1130–32 (applying the probate exception to the federal bankruptcy jurisdiction statute, 28 U.S.C. § 1334). Moreover, the Supreme Court's language in *Marshall v. Marshall* is also broad, recognizing the "'probate exception' . . . to otherwise proper federal jurisdiction," 547 U.S. at 308, and the Supreme Court has applied the probate exception to federal officer plaintiff jurisdiction, *see Markham v. Allen*, 326 U.S. 490 (1946) (applying the probate exception to jurisdiction based on § 24(1) of the Judicial Code, presently codified at 28 U.S.C. § 1345). Accordingly, while there is no precedent on whether the probate exception applies to federal officer removal jurisdiction, the Court finds it appropriate to apply the probate exception to the present case.

Plaintiff first argues that the Blues subrogation claim seeks property under the control of the probate court. (ECF No. 16, at 9.) Contrary to Plaintiff's assertion, the Blues do not seek to reach a *res* in custody of the state court. While they have instituted a lien, any judgment granted to them in this Court would be an *in personam* judgment against Plaintiff for his alleged failure to repay the Blues the benefits received under the FEHBA insurance plan. Thus the Blues' claim does not seek to reach property in the custody of the state court.

Plaintiff next argues that an adjudication by this Court will interfere with the State Court Case because California Probate Code § 3500 requires that a California Superior Court approve any compromise or covenant of a minor's disputed. (ECF No. 6-1, at 12.) The Blues argue that adjudication of this case will only determine the validity of the Blues' liens and afterwards the state court will distribute Plaintiff's settlement funds though bound by this Court's determination regarding the liens. (ECF No. 15, at 21.) The Court agrees with Plaintiff. California Probate Code § 3500 is not a mere rubber stamp, it allows California state courts to determine whether a

compromise assumed by a minor's guardian ad litem is reasonable. *See* CAL. PROB. CODE §§ 3600–01. If this Court were to adjudicate the validity of the Blues' lien, such an adjudication would bind the state court tasked with approving any settlement. As it is the state court's responsibility to determine the reasonableness of any claim against Plaintiff's settlement, *see* CAL. PROB. CODE § 3601, an adjudication of Plaintiff's motion to expunge by this Court would necessarily "interfere with the probate proceedings" by removing the state court's discretion to approve or disapprove the Blues' lien on Plaintiff's settlement. *See In re Marshall*, 392 F.3d at 1133. Accordingly, the Court finds that the probate exception to federal jurisdiction applies to this action and thus this action must be remanded to state court.

**E. Attorney Fees**

Additionally, Plaintiff seeks an award of attorneys' fees pursuant to 28 U.S.C. § 1447 (c). (ECF No. 6-1, at 12–13.) § 1447(c) authorizes an award attorneys' fees "only where the removing party lacked on objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 426 U.S. 132, 141 (2005). While the Court is ultimately required to remand this action, the issues regarding federal officer removal and the probate exception involved a complex analysis involving unclear areas of law. *See Cabalce v. VSE Corp.*, 922 F. Supp. 2d 1113, 1129 (D. Haw. 2013). Accordingly, the Court finds that the Blues had an "objectively reasonable basis" for seeking removal and thus **DENIES** Plaintiff's request for attorneys' fees. *See id.*; *Martin*, 426 U.S. at 141.

**V. CONCLUSION AND ORDER**

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Remand, (ECF No. 6), is **GRANTED** as to remand and **DENIED** as to attorneys' fees; and

2. Plaintiff's Ex Parte Motion for Leave to File Submission of Supplemental Authority is **GRANTED**;

3. All pending motions, (ECF Nos. 4, 24), are **DENIED** as moot; and

      4.     This action is **REMANDED** back to state court.

DATED: December 3, 2014

                                      HON. GONZALO P. CURIEL
                                      United States District Judge